# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of Redeemed Christian Church :
of God, Living Spring Miracle Center, :
Inc. From the Decision of the Zoning :
Hearing Board of Lower Chichester : No. 930 C.D. 2015
Township Dated May 21, 2014 : Argued: May 12, 2016
:
Appeal of: Redeemed Christian Church :
of God, Living Spring Miracle Center, Inc. :

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                          **FILED: December 28, 2016**

Redeemed Christian Church of God, Living Spring Miracle Center, Inc. (Appellant) appeals from the April 29, 2015 order of the Court of Common Pleas of Delaware County affirming the May 21, 2014 decision of the Zoning Hearing Board of Lower Chichester Township (Board) that denied an application for a use variance for a parcel that Appellant owns within Lower Chichester Township (Township). For the following reasons, we reverse the order of the Court of Common Pleas.

The property at issue in this matter is an 8-acre site in the Business Park District (BP District) of the Township at 1000 Columbia Avenue, Linwood, Pennsylvania (Property), on which is located a 47,000 square foot office building (Building). (Board Decision Findings of Fact (F.F.) ¶¶5, 6, 11.) Appellant is a

branch of the Redeemed Church of God with locations in more than 150 countries, has a congregation of over 400 individuals and has helped to establish 15 other branches of the Redeemed Church of God in North America. (March 12, 2014 Board Hearing Transcript (3/12/14 H.T.) at 17-18, Reproduced Record (R.R.) 91a.) In addition to its function as a church, Appellant performs substantial community outreach and ministry work, including providing educational training, operating food banks and promoting medical screenings. (*Id*. at 18-20, R.R. 91a.)

Appellant initially entered into an agreement of sale to purchase the Property in 2010. (*Id*. at 38-39, R.R. 96a.) At that time, the Township's Zoning Ordinance (Ordinance) provided for 11 categories of by-right uses in the BP District, including the following three uses: "[m]otel or hotel, conference facilities, training, or continuing education centers..."; "[p]lace of public amusement, entertainment or assembly, including a movie theater, provided such use is inside a building"; and "[e]ducational or recreational use, day care center, nursery school, medical clinic and non-profit use." (Prior Ordinance § 1282.02(a), R.R. 213a.)

On April 26, 2010, Appellant's Pastor Funmi Obilana sent a letter to the Township Code Enforcement Officer in which she stated that Appellant was in the process of acquiring the Property and that the Property would be used for a multi-media production center, a community development center, a regional fellowship and conference center and a "[p]lace of praise and worship." (Supplemental Reproduced Record (Supp. R.R.) 1b.) The Code Enforcement Officer responded by letter on April 29, 2010 indicating that the proposed uses would not be permitted in the BP District and do not meet the purpose of the BP

2

District as set forth in the Ordinance.[1]  (Supp. R.R. 2b.)  On August 12, 2010, the Township Board of Commissioners enacted an ordinance that amended Section 1282.02(a) of the Ordinance to remove the three categories of by-right uses described above related to motels, hotels, conference facilities, training and continuing education centers, places of public amusement, entertainment or assembly and educational and recreational uses.[2]  (Ordinance No. 2010-03, R.R. 221a-222a.)  Appellant was unable to obtain financing to purchase the Property in 2010 and the agreement of sale expired.  (3/12/14 H.T. at 39, R.R. 96a.)

Therefore, at the time of the application at issue in this appeal, the Ordinance provided for the following permitted uses as of right in the BP District:

(1) Retail sales and wholesale sales, including factory outlets;

(2) Office building and professional centers;

(3) Personal service establishment;

---

[1] The purpose of the BP District as set forth in the Ordinance, both before and after the 2010 amendments, provides:

The BP Business Park District is designated primarily to provide for selected modern, non-nuisance, commercial and light industrial establishments with a view to encouraging attractive development in areas which are particularly well suited for such uses. In promoting the general purposes of this Zoning Code, the intent of the BP District is to encourage only those types of commercial and light industrial uses which would not constitute a hazard or a nuisance to the population of the adjacent areas and which would contribute to the continuation of appropriate development within and adjacent to the District and to discourage the use of land for residences in order to preserve the area for its appropriate use and also to prevent the location of residences in an area inappropriate for residential use.

(Prior Ordinance § 1282.01, R.R. 212a; Ordinance § 1282.01, R.R. 177a.)

[2] The Township removed one additional category of by-right use for health or sports clubs and gymnasiums in August 2010.  (Prior Ordinance § 1282.02(a), R.R. 213a; Ordinance No. 2010-03, R.R. 221a-222a.)

(4) Eating and/or drinking establishments providing inside and/or outside seating and service, including drive-through windows;

(5) Assembly of high technology and electronic equipment;

(6) Bank, travel agency and other like service establishments;

(7) Accessory use with and customarily incidental to any of the foregoing permitted uses[.]

(Ordinance § 1282.02(a), R.R. 177a.) Several other conditional uses were also permitted in the BP District:

(1) Manufacture, assembly, compounding, processing, packaging or treatment of products;

(2) Printing, publishing, lithographing, binding and similar process;

(3) Office and shops or service areas for service business or contractors;

(4) Warehouse, storage house, or distribution center, express or trucking establishment;

(5) Motor vehicle dealer or auto rental agency;

(6) Scientific research laboratory or other experimental, testing or research establishment devoted to research, development, design, experimentation or production[.]

(*Id.* § 1282.02(b), R.R. 177a.)

Despite its earlier problems securing financing, Appellant was ultimately successful in acquiring the Property by special warranty deed dated April 26, 2011 and recorded May 27, 2011. (Application ¶9, R.R. 147a; Special Warranty Deed, R.R. 153a-155a.) On April 8, 2013 the Township issued a Certificate of Occupancy and Use for a business use with a maximum occupancy of 470 people. (R.R. 209a-210a.) Appellant began using 24,000 square feet of the

4

Building for office space to support its church, ministry and other activities, and, on January 16, 2014, Appellant applied for a use variance to use the remaining 23,000 square feet of space in the Building for "assembly uses, including conferences, continuing education classes, and worship services." (Application ¶¶10-11, R.R. 147a.) The application proposed two layouts for the portion of the Building for which Appellant sought a use variance: first, a weekday, "classroom/educational layout" that would provide for approximately 400-425 seats broken down into 4 different rooms of varying sizes. (Application ¶14, Exhibit C, R.R. 148a, 156a, 235a.) In addition, the application called for an "assembly layout" for weekend services which would convert the two larger classroom spaces into a "single theater style assembly room" with 375 to 385 seats. (Application ¶15, Exhibit C, R.R. 148a, 157a, 233a.)

Hearings were held by the Board on the request for a variance on March 12 and April 8, 2014. At the hearings, Pastor Obilana testified that approximately half of the 47,000 square feet of office space in the Building was used by Appellant for office purposes and occasional trainings for church members, but that it is not practical for Appellant to use the entire space as offices. (3/12/14 H.T. at 22, 44, 48-51, R.R. 92a, 97a-99a.) Pastor Obilana testified that the Property had been listed for rent by a real estate company for over one year but Appellant had not been able to secure a tenant. (*Id*. at 22-23, R.R. 92a.) Pastor Obilana stated that she would anticipate 200 to 250 parishioners attending services at the Property with opportunity for some growth but if the church grew substantially it would move to a different location. (*Id*. at 20-21, R.R. 91a-92a.) In addition to the regular Sunday services, Pastor Obilana testified that Appellant

5

would also hold Bible studies and prayer meetings on weekday evenings once per month. (*Id*. at 28-30, R.R. 93a-94a.)

Appellant presented the testimony of Mike Cosentino, an architect, and Susan C. Phillips as an expert in land planning and traffic engineering. Cosentino testified that the Building, which was purposely designed as a corporate headquarters for a single company, would require extensive renovations and would be difficult to lease to a single user because of its layout as a corporate headquarters. (*Id*. at 60-65, 81, R.R. 101a-103a, 107a.) Cosentino stated specifically that the open atrium at the center of the Building could present a significant impediment to any reuse of the Building as an office and converting the atrium into office space would be expensive. (*Id*. at 61-62, R.R. 102a) Regarding the proposed conversion of half of the Building, Cosentino testified that it was designed as a flex space capable of several different configurations and that it would satisfy building code requirements regarding exits and the number of restrooms even if every seat were filled. (*Id*. at 70, 72, 75-76, R.R. 104a-105a.) Phillips testified that the road network within the business park was adequate to support Appellant's proposed uses, noting that on her site visit to the Property she observed many empty parcels in the surrounding area that were advertised for rent. (*Id*. at 54-56, R.R. 100a.) Phillips described her analysis of the parking capacity based on guidelines published by the Institute of Transportation Engineers and concluded that even with a maximum church attendance with all 385 seats full only 181 of the 186 parking spaces on the Property would be taken. (*Id*. at 90-92, R.R. 109a.) Phillips further opined that on a weekday, with 372 seats occupied at the conference center and full capacity in the office space, only 180 of 186 parking spaces would be occupied. (*Id*. at 90-92, 95-97, R.R. 109a-111a.)

6

The Township's expert Thomas Comitta, a municipal planning consultant, testified that the proposed assembly, conference center and worship uses are not permitted in the BP District and are also not consistent with the Township comprehensive plan, because the heavy tractor trailer traffic at the neighboring Fed Ex distribution center would not be compatible with a church where children and families are present. (April 8, 2014 Board Hearing Transcript (4/8/14 H.T.) at 12-15, 22-23, 35-38, R.R. 117a-118a, 120a, 123a-124a.) In addition, Comitta opined that the proposed uses would also be inconsistent with the purpose of the BP District because granting a variance for a tax-exempt religious use would be detrimental to the Township from a fiscal perspective. (*Id.* at 24-25, R.R. 120a-121a.) Noting that there are five existing churches in the more densely populated eastern portion of the Township, Comitta testified that each of the requested uses would be permitted in other portions of the Township, with religious, training and continuing education center uses permitted in the R-2 Residential District and as a conditional use in planned development districts of 25 acres or greater and public assembly and conference facility uses permitted only in planned development districts of 25 acres or greater. (*Id.* at 27-28, R.R. 121a.)

The Township also called as a witness Joseph Possenti, the manager of the Township, who testified that real estate tax revenue has decreased for the Township as a result of the closing of a Sunoco plant and reassessments of property at lower values and earned income tax revenue has decreased as a result of the loss of Sunoco jobs. (*Id.* at 67-68, R.R. 131a.) Possenti stated that the 2010 amendment to Section 1282.02 of the Ordinance was designed to remove non-profits from the BP District because they are exempt from real estate taxes. (*Id.* at 70-71, R.R. 132a.) Possenti finally testified that the Property has been empty for 5

to 10 years since the prior tenant left and that the property assessment has been lowered several times during that period. (*Id.* at 71-72, R.R. 132a.)

In its decision denying the application, the Board concluded that Appellant had failed to meet its burden in establishing any of the five elements for a use variance under the Pennsylvania Municipalities Planning Code (MPC).[3] The Board concluded that Appellant had failed to prove a hardship because other viable uses are permitted under Section 1282.02 of the Zoning Ordinance, including the existing use of half of the Building as an office. (Board Decision F.F. ¶33, Conclusions of Law (C.L.) ¶¶6-8.) The Board determined that the variance must be denied because the alleged hardship is not unique to the Property and was a mere economic hardship, noting that Appellant's expert admitted that the Property could be used as a corporate headquarters, and the only alleged hardship is therefore that Appellant could not use the entirety of the space in the Building. (*Id.* F.F. ¶¶21-22, 32, C.L. ¶¶13-17.) The Board concluded that Appellant's hardship was self-created because it purchased the Property knowing that it did not need the entirety of the Building for office space and the assembly and religious uses sought in the variance application were not permitted. (*Id.* F.F. ¶¶12, 34, C.L. ¶¶19-20.) The Board further determined that the requested variance would substantially impair the surrounding commercial and industrial properties because it would introduce children and pedestrians into a district full of heavy truck traffic, odor and noise and that the use is incompatible with the BP District because it would harm the tax base of the Township. (*Id.* F.F. ¶¶9, 16, 18, 26-28, 30-31, 37-41, C.L. ¶¶21-24.) Finally, the Board concluded that the requested variance of

---

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202.

8

approximately 50% of the Property was not the minimum variance that would provide Appellant relief. (*Id*. F.F. ¶14, C.L. ¶¶25-26.)

The Court of Common Pleas affirmed the Board's determination. In its opinion, the court focused on the first factor in establishing a use variance under Section 910.2 of the MPC,[4] holding that there were no unique physical circumstances or conditions causing a hardship, but rather the Building's size and shape were only related to the personal needs of Appellant and the unmarketability of the Building for lease related to general economic conditions. (Ct. of Common Pleas Op. at 7-8.) Furthermore, the lower court observed that a hardship could not be established because the Building had been utilized as a corporate headquarters for a use permitted in the Ordinance, Appellant continued to use close to half of the Property for a permitted use and Appellant's expert conceded that an office use was appropriate for the Property. (*Id.* at 6-7.)

On appeal, Appellant argues that the Board erred in denying the application because it misapplied the law applicable to use variances. In particular, Appellant contends that the Board ignored applicable precedent which allows an existing building to constitute an unnecessary hardship that would not have a reasonable use under the applicable ordinance. Appellant further argues that merely purchasing the Property with awareness did not make a "self-created" hardship and that the requested variances are not contrary to the public welfare and represent the minimal variance necessary to provide Appellant relief from the hardship. Finally, Appellant argues that the Board abused its discretion because it

---

[4] Section 910.2, 53 P.S. § 10910.2, was added to the MPC by the Act of December 21, 1988, P.L. 1329.

9

capriciously disregarded the expert testimony that it presented to show that the Building could not be used for any of the uses permitted in the BP District.[5]

Upon review, we agree with Appellant that the Board misapplied and ignored the standards relevant to a use variance application. Our review of the evidence leads us inescapably to the conclusion that Appellant had demonstrated an unnecessary hardship on the Property and the application should have been granted.

Pursuant to Section 910.2(a) of the MPC, an applicant for a variance must demonstrate that: (i) there are unique physical conditions peculiar to the property and that the unnecessary hardship is due to those conditions; (ii) because of the physical conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and that a variance is needed to enable reasonable use of the property; (iii) the unnecessary hardship has not been created by the applicant; (iv) the variance is not detrimental to the public welfare; and (v) the variance is the minimum variance that will afford relief and is the least modification of the regulation at issue. 53 P.S. § 10910.2(a).

A hardship can be established by showing that: (i) the physical features of the property are such that it cannot be used for a permitted purpose; (ii) the property can be conformed for a permitted use only at a prohibitive expense; or

---

[5] Where, as here, the lower court has not taken additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an error of law or abused its discretion. *Larsen v. Zoning Board of Adjustment of the City of Pittsburgh,* 672 A.2d 286, 288-89 (Pa. 1996); *Nowicki v. Zoning Hearing Board of Borough of Monaca*, 91 A.3d 287, 291 n.1 (Pa. Cmwlth. 2014). An abuse of discretion will be found only where the board's findings are not supported by substantial evidence. *Larsen,* 672 A.2d at 289; *Nowicki*, 91 A.3d at 291 n.1. A capricious disregard of evidence occurs only when the fact finder deliberately ignores relevant, competent evidence. *Hellam Township v. Hellam Township Zoning Hearing Board*, 941 A.2d 746, 749 (Pa. Cmwlth. 2008)

(iii) the property has no value for any purpose permitted by the zoning ordinance. *Marshall v. City of Philadelphia*, 97 A.3d 323, 329 (Pa. 2014); *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998). The hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district. *Marshall*, 97 A.3d at 329; *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983). Where the argument for a hardship is based on economic arguments, evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance, but the applicant is not required to show that the property is valueless without the variance or that the property cannot be used for any permitted use. *Marshall*, 97 A.3d at 330; *Valley View Civic Association,* 462 A.2d at 641-42. The party seeking a use variance bears a heavy burden, and the reasons for granting a variance must be substantial, serious and compelling. *Valley View Civic Association,* 462 A.2d at 640; *Nowicki v. Zoning Hearing Board of Borough of Monaca*, 91 A.3d 287, 291 (Pa. Cmwlth. 2014).

The Board determined that Appellant had not established a hardship because it had only showed that it was prevented from using the entirety of the Building for its offices and that "mere economic hardship" is insufficient to justify a variance request. (Board Decision C.L. ¶¶6-11, 17 (quoting *Wilson v. Plumstead Township Zoning Hearing Board*, 936 A.2d 1061, 1069 (Pa. 2007)).) However, Appellant's application for a variance was not premised on the argument simply that it was not able to use the entirety of the space in the Building and that it would be more financially lucrative to use part of the Building in a different way than a strict reading of the zoning allowed; such arguments are clearly insufficient to establish entitlement to a use variance. *See Wilson*, 936 A.2d at 1070 ("A variance

11

will not be granted because a zoning ordinance deprives the landowner of the most lucrative and profitable uses.") (quotation omitted); *Township of Washington v. Washington Township Zoning Hearing Board,* 365 A.2d 691, 692 (Pa. Cmwlth. 1976) (holding that owner of large building used for fruit storage could not seek use variance to allow conversion of unneeded portion of building to plastic production and storage on a mere showing of economic hardship). Rather, the argument underlying Appellant's application for a variance centers on the fact that the Building represented an outdated and functionally obsolete office building that cannot reasonably be put to any permitted use in the BP District absent substantial and costly renovations.

Although hardships are usually associated with the physical characteristics of the land, an unnecessary hardship can also relate to the building itself. *Wagner v. City of Erie Zoning Hearing Board,* 675 A.2d 791, 799 (Pa. Cmwlth. 1996) (*en banc*). "[W]here premises cannot be converted into a permitted use without demolition and extensive reconstruction, more than 'mere economic hardship' exists." *Zoning Hearing Board of the Township of Indiana v. Weitzel,* 465 A.2d 105, 107 (Pa. Cmwlth. 1983) (quoting *Logan Square Neighborhood Association v. Zoning Board of Adjustment of the City of Philadelphia,* 379 A.2d 632, 634 (Pa. Cmwlth. 1977)); *see also Wagner,* 675 A.2d at 799. Property owners are not required to overhaul a building to a conforming use regardless of financial burden. *Halberstadt v. Borough of Nazareth*, 687 A.2d 371, 373 (Pa. 1997); *Logan Square Neighborhood Association,* 379 A.2d. at 634. In addition, this Court has regularly considered that evidence of a building's vacancy and unmarketability contribute to a finding of a unique hardship on the property. *See, e.g.*, *South of South Street Neighborhood Association v. Philadelphia Zoning Board of*

12

*Adjustment,* 54 A.3d 115, 122 (Pa. Cmwlth. 2012) (holding that building's long-term vacancy and the applicant's sustained, but unsuccessful attempt to sell the property for a permitted industrial use established an unnecessary hardship that would support use variance application); *Vitti v. Zoning Board of Adjustment of City of Pittsburgh*, 710 A.2d 653, 657-58 (Pa. Cmwlth. 1998) (affirming grant of use variance based in part on fact that building on property had been vacant for over seven years, the building was dilapidated and the property was located in a downtrodden area); *Wagner,* 675 A.2d at 792-93, 799 & n.9 (affirming finding of hardship and grant of dimensional and parking requirement variance where former motel on property had deteriorated, was vacant for several years and property was unsuccessfully listed for sale for three years).

Here, Appellant presented evidence that the Building was designed as a corporate headquarters for a single user with a large glass-walled atrium at the center and separate wings for each department of the company. When Appellant purchased the Property in 2011, the Building had been vacant for several years since the prior tenant left and there were various other vacant parcels in the surrounding business park. Appellant attempted to market the Building for rent to a single tenant for over 1 year before filing its variance application, but these efforts were unsuccessful; in the meantime, Appellant began to use a portion of the Building as its office space. Cosentino, Appellant's architect expert, testified that renting the Building to a single tenant would be difficult because of the layout and that renting the Building out to multiple tenants would require significant renovations, including structural and architectural alterations to the Building as well as mechanical, electrical and plumbing to remove the atrium. (3/12/14 H.T. at 62-65, R.R. 102a-103a.) Cosentino testified that the Building would be ill-suited

13

to any of the remaining by-right and conditional uses allowed in the BP District. (*Id*. at 63-69, R.R. 102a-104a.)

The Board did not make a credibility determination regarding Cosentino or Appellant's other witnesses, and relied on the fact that Cosentino stated that Appellant's use of a portion of the Building for its offices is compliant with the BP District provisions in the Ordinance to support its ruling that there was no unnecessary hardship that prevented Appellant from using the Property in accordance with the Ordinance. (Board Decision F.F. ¶¶21-22; 3/12/14 H.T. at 78-79, R.R. 106a.) However, because the state of a building may create an unnecessary hardship under the MPC, the mere fact that Appellant has used a portion of the Building for a permitted use does not negate the fact that the state of the Building can be an unnecessary hardship and cannot obligate it to maintain its partial use of the Building in perpetuity. The Board also relied on an apparent admission by Cosentino that the Building could be used by another company as a corporate headquarters. (Board Decision C.L. ¶13; 3/12/14 H.T. at 82, R.R. 107a.) This conclusion, however, does not accurately recite Cosentino's testimony. Cosentino stated only that there exist companies who could occupy a 47,000 square foot corporate headquarters, not that there are any companies who could occupy this specific Building in its current state. (3/12/14 H.T. at 82, R.R. 107a.)

Accordingly, in light of the standards applicable to variance applications under the MPC, we conclude that this evidence established that there was an unnecessary hardship on the Property and that Appellant was unable to use the Property without a variance.

Next, we address the Board's conclusion that Appellant created the unnecessary hardship on the Property from which it now seeks relief. The Board

14

found that Appellant created the hardship because it bought the Property knowing that it did not need the entirety of the office space in the Building. However, our case law is clear that merely purchasing a property with a hardship does not make a hardship self-created. Our Supreme Court explained in *Wilson* that "[w]ith respect to a landowner who purchases with knowledge of the property's condition and existing zoning restrictions, the hardship is deemed self-inflicted only where he has paid an unduly high price because he assumed the anticipated variance would justify the price, or where the size and shape of the parcel was affected by the transaction itself." 936 A.2d at 1069 (quoting *Marlowe v. Zoning Hearing Board of Haverford Township,* 415 A.2d 946, 951 (Pa. Cmwlth. 1980)); *see also Pohlig Builders, LLC v. Zoning Hearing Board of Schuylkill Township*, 25 A.3d 1260, 1273 (Pa. Cmwlth. 2011); *Manayunk Neighborhood Council v. Zoning Board of Adjustment of the City of Philadelphia*, 815 A.2d 652, 657 (Pa. Cmwlth. 2002). Here, while Appellant was aware that its desired use of the Building was not compliant with the Township's interpretation of the Ordinance prior to its purchase of the Property, there is nothing in the record indicating that the purchase price paid by Appellant presumed the variance would be granted or that the potential economic hardship of the Building affected the transaction.

Regarding the fourth variance factor under the MPC, the Board determined that the proposed uses would be detrimental to the public welfare of the Township for two reasons. First, the Board found that the proposal to devote half of the Building to space for religious assembly and trainings and conferences would substantially impair the surrounding neighborhood because it would introduce children, families and pedestrians into an area full of commercial and light industrial properties. Such a finding, however, is not supported by the record

15

as there no evidence that either the individuals or families attending the services or trainings at the Building would enter or leave the Property by foot. It is clear from the record that the Property is in an isolated part of the Township near an interstate highway, the Property was designed for automobile access with 186 parking spaces and there are no sidewalks on the Property or in the surrounding parcels that would draw pedestrians to or from the Property. Moreover, the Township's position that children and pedestrians would be harmful to the public welfare and hostile to the purpose of the business park is belied by the fact that the Ordinance expressly permits various by-right uses that would likely draw many more pedestrians and children to the Property, such as retail stores, factory outlet stores, personal service establishments, banks, travel agencies and eating and drinking establishments, including those with outside seating and service. (Ordinance § 1282.02(a), R.R. 177a.)

The second ground for the Board's determination that the proposed uses are detrimental to the public welfare because the Property would be exempt from property taxes and therefore the Township's tax base would be diminished. Though we do not dispute that one of the primary tasks of a municipality is to improve its finances, such considerations are not a proper basis for a zoning hearing board to deny an individual application. This Court has "consistently held that tax base concerns cannot be decisive in a zoning case." *Baker v. Chartiers Township Zoning Hearing Board*, 677 A.2d 1274, 1279 (Pa. Cmwlth. 1996); *see also Spencer v. McKean Township Zoning Hearing Board*, 537 A.2d 943, 945 n.3 (Pa. Cmwlth. 1988); *White Advertising Metro, Inc. v. Zoning Hearing Board of Susquehanna Township*, 453 A.2d 29, 34 & n.11 (Pa. Cmwlth. 1982); *A. J. Grosek & Associates v. Zoning Hearing Board of Montrose Borough*, 450 A.2d 263, 266

16

(Pa. Cmwlth. 1982); *Brentwood Borough v. Cooper*, 431 A.2d 1177, 1179 (Pa. Cmwlth. 1981); *Zajac v. Zoning Hearing Board of Mifflin Township*, 398 A.2d 244, 247 (Pa. Cmwlth. 1979). In a case such as this where the proposed use is religious in nature, we believe that a potential exemption from property taxes would be particularly misplaced as a factor in determining whether a request for a variance would be contrary to the public welfare.[6]

Finally, we address the last criteria of whether the proposed uses are the minimum variance necessary to provide relief. The Board concluded that Appellant had not met its burden of demonstrating that the proposed uses were the minimum variance. The Board, however, did not elucidate any reason for its conclusion that Appellant did not meet the minimization requirement, hindering our appellate review and in violation of the requirements of the MPC. *See* Section 908(9) of the MPC, 53 P.S. § 10908(9) ("Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together *with the reasons therefor*.") (emphasis added). Furthermore, our review of the evidence shows that the Board's conclusion was in error and the application did represent the minimum variance required. The proposed educational, training and religious uses would require modifications only to approximately half of the interior of the Building and only to that portion of the Building that Appellant was unable to use as office space and that represented the hardship. The proposed uses, particularly the training and educational functions of the Building, are also substantially similar to permitted commercial uses and therefore have a minimal impact on the use of neighboring property owners and the

---

[6] This Court wishes to emphasize that not all real estate owned by a religious institution is tax exempt. The ownership of a building does not determine its tax status, but rather it is the nature of the use.

17

health of the BP District as a whole. Furthermore, no alteration would be required to the outside of the Building or to the parking lot or entrances.[7]

Accordingly, we conclude that the Board erred in denying Appellant's application for a variance to repurpose half of the Building for religious, training and education uses. The order of the Court of Common Pleas of Delaware County affirming the Board's denial of Appellant's application for a use variance is reversed.

_____
JAMES GARDNER COLINS, Senior Judge

---

[7] This Court has previously called into question the applicability of this requirement in pure use variance cases, stating that, while the minimization requirement of the MPC has clear application in dimensional variance requests, no appellate cases existed analyzing the requirement in a case where only a use variance was requested and its applicability to such cases is often tenuous. *See South of South Street Neighborhood Association*, 54 A.3d at 124. Here, too, we recognize that the question of whether Appellant has asked for the minimum variance necessary to provide relief is difficult to assess compared to dimensional variance cases, but we conclude that to the extent such a requirement is present, Appellant has satisfied it.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of Redeemed Christian Church : 
of God, Living Spring Miracle Center, : 
Inc. From the Decision of the Zoning : 
Hearing Board of Lower Chichester : No. 930 C.D. 2015
Township Dated May 21, 2014 : 
 : 
Appeal of:  Redeemed Christian Church : 
of God, Living Spring Miracle Center, Inc. : 

## O R D E R

AND NOW, this 28th day of December, 2016, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is REVERSED.

_____
JAMES GARDNER COLINS, Senior Judge