**SOUTH OF SOUTH STREET NEIGHBORHOOD ASSOCIATION, Kevin Broad, Patrick Borkowski, Nicole Flaquer and Wei Jing Lei, Appellants.**

**v.**

**PHILADELPHIA ZONING BOARD OF ADJUSTMENT, the City of Philadelphia and Dung Phat LLC.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 1, 2012.
Decided Sept. 13, 2012.
Reargument Denied Nov. 1, 2012.

---

S. David Fineman, Philadelphia, for appellants.

Joseph Beller, Philadelphia, for appellee Dung Phat, LLC.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge BROBSON.

Appellant South of South Street Neighborhood Association, Kevin Broad, Patrick Borkowski, Nicole Flaquer, and Wei Jing Lei (collectively, the Association) appeal from an order of the Court of Common

Pleas of Philadelphia County (trial court). The trial court affirmed a decision of the Zoning Board of Adjustment of the City of Philadelphia (ZBA). The ZBA's decision granted a variance to Dung Phat LLC (Dung Phat), subject to certain conditions. We affirm the trial court's order.

We summarize the pertinent factual and procedural history below, based upon the ZBA's factual findings and the record. Since 1999, Dung Phat has owned a tract of land in the City of Philadelphia (City) that occupies all but one corner of the City block that is bounded by Washington Avenue, 24th Street, Carpenter Street, and 23rd Street (hereafter, the Property). (ZBA Finding of Fact (FF) No. 13.) The Property is located in a G–2 Industrial zoning district, and it consists of 138,866 square feet upon which is situated a vacant industrial building with a footprint of 94,-894 square feet. (FF Nos. 12, 13.) The remaining area of the block is zoned as an R–10A Residential district, and residential uses occupy that area. (FF No. 14.) Uses along 23rd Street, 24th Street, and Carpenter Street include residential dwellings and an assisted living facility. (FF No. 15.) Washington Street has "industrial and commercial uses, with commercial uses becoming increasingly common." (FF No. 16.)

In March 2001, Dung Phat submitted an application to the City's Department of Licenses and Inspections (L & I) for a permit to use the Property for a shopping center containing a supermarket, a laundromat, and up to fifty retail stores. (FF No. 19.) L & I denied that application, and Dung Phat appealed that decision to the ZBA. (Id.)The ZBA affirmed L & I's denial. (Id.)

In September 2001, Dung Phat filed two more applications regarding the use of the Property. One of the applications sought approval to use the part of the Property located at 2301–99 Washington Street for wholesale and retail purposes permitted in areas zoned C–3 Commercial. (FF No. 20.) The other application sought approval to place parking on the part of the Property located at 2401 Washington Street. (Id.)The ZBA denied those applications. (Id.)

On October 9, 2008, Dung Phat, through Michael Sharir, a design professional, submitted an application to L & I seeking a zoning/use registration permit for the Property. (FF No. 1.) In this application, Dung Phat sought approval for the following: (1) consolidation of the three lots which comprise the Property; (2) creation of individual tenant spaces for a variety of retail and wholesale uses, including uses permitted in C–2 Commercial zoning districts; (3) an accessory parking lot containing 119 spaces, including six (6) spaces for physically handicapped drivers/patrons; and (4) structural changes, including second story additions to the existing building, as well as dormers, and a forty-eight (48)-foot-high clock tower. (Id.). L & I denied the application on November 2, 2008, noting that the uses Dung Phat proposed are not permitted in G–2 Industrial districts and that the proposed accessory parking spaces did not meet the dimensional requirements for such contained in the Philadelphia Zoning Code. (FF No. 2.)

Dung Phat, through its architects, appealed L & I's decision to the ZBA. (FF No. 3.) Dung Phat asserted in its appeal that the Property was subject to a hardship by virtue of the zoning requirements, arguing that the G–2 zoning restrictions are inappropriate in the area, which, as indicated above, is becoming increasingly commercial in nature. Dung Phat also asserted that the proposed use was not contrary to the public welfare, and, in fact, was more compatible with the neighboring residential and commercial uses than the

industrial uses permitted in G–2 districts. Finally, Dung Phat asserted that the proposed parking spaces are adequate. (FF No. 4.)

The ZBA conducted a hearing on Dung Phat's appeal on March 11, 2009. The ZBA voted that day to grant the variances Dung Phat requested, subject to the conditions that (1) trash is to be stored within property lines, (2) no loading docks will be located on Washington Avenue, and (3) the proposed laundromat will operate only during certain limited hours. (FF No. 5.) In response to a letter from counsel for the Association, however, the ZBA decided to reconsider its decision and held a second hearing on May 13, 2009. The ZBA proceeded to accept testimony during that hearing and during a second hearing that followed.

On January 12, 2010, the ZBA issued a decision, granting Dung Phat the variance relief it had requested, subject to conditions identified in a December 14, 2009 letter the City's Planning Commission sent to the ZBA. (FF No. 11.) Those conditions were: (1) Dung Phat must keep a four-foot wall in front of the parking lot; (2) Dung Phat will use a trash enclosure as part of the building, rather than fencing in trash; and (3) all deliveries and trash pickup will be conducted from inside the parking lot, and not from Carpenter Street, 23rd Street, or 24th Street. (*Id.*)

In reaching this decision, the ZBA concluded that Dung Phat had demonstrated the existence of an unnecessary hardship and that granting Dung Phat the requested variance relief would not substantially affect adjoining landowners or the general public in an adverse manner. The Associ-

ation appealed the ZBA's decision, and the trial court affirmed the ZBA.

The Association now appeals from the trial court's order,[1] raising the following issues: (1) whether the trial court erred in concluding that (a) Dung Phat established the existence of an unnecessary hardship, (b) granting the variance would not alter the character of the neighborhood, (c) the grant of the variance would not be detrimental to the public welfare, and (d) the grant of a variance will not substantially increase congestion in the public streets; (2) whether the trial court erred in concluding that the doctrine of res judicata does not bar the ZBA's consideration of Dung Phat's application; and (3) if the trial court correctly concluded that an unnecessary hardship exists, whether it erred in concluding that the relief Dung Phat requested was the minimum variance that will afford relief from the hardship. If the trial court erred in its analysis concerning res judicata, such a result would render consideration of the other issues unnecessary. Before considering these issues raised by the Association, however, we will first address an issue Dung Phat has raised in its brief.

 Dung Phat argues in its brief that the Association lacks standing to bring this appeal, and, therefore, this Court should reject the Association's appeal. In *Thompson v. Zoning Hearing Board of Horsham Township*, 963 A.2d 622 (Pa.Cmwlth.2009), we rejected a standing challenge in an appeal where a trial court concluded that a party could not raise an objection to an opponent's standing when the party whose standing was questioned participated before the zoning hearing board without objection. We con-

---

1. When, as here, the trial court accepts no additional evidence in a zoning appeal, our review is limited to considering whether the zoning hearing board erred as a matter of law or abused its discretion. *German v. Zoning Board of Adjustment*, 41 A.3d 947 (Pa.Cmwlth. 2012).

cluded that a party is "necessarily ... aggrieved by" a zoning hearing board's "adverse decision and had standing to appeal that decision to the trial court." *Thompson*, 963 A.2d at 625 (citing *Baker v. Zoning Hearing Bd. of West Goshen Twp.*, 27 Pa.Cmwlth. 602, 367 A.2d 819 (1976)). Moreover, a challenge to standing is not one that is jurisdictional in nature. *Housing Auth. of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209, 214 (Pa.Cmwlth.2012). Consequently, because the Association participated in the proceeding before the ZBA, without objection from Dung Phat, we conclude that the Association has standing. Therefore, we will proceed to discuss the merits of the issues the Association has raised in its appeal.

■ First, we will address the Association's argument that trial court erred in concluding that Dung Phat's claims are not barred by the doctrine of res judicata. The doctrine of res judicata, or claim preclusion, will bar litigation of a claim when an identity exists as to four factors between an earlier and subsequent claim or cause of action. *Tobias v. Halifax Twp.*, 28 A.3d 223, 226 (Pa.Cmwlth.2011), *appeal denied*, —— Pa. ——, 47 A.3d 849 (2012). Those four factors are: (1) the identity of the thing sued for; (2) the identity of the cause of action; (3) the identity of the persons and parties to the action; and (4) the identity of the quality in the persons for or against whom the claim is made. *Id.* Recognizing the need for flexibility in zoning matters, courts apply the doctrine sparingly in zoning cases. *Price v. Bensalem Twp. Zoning Hearing Bd.*, 131 Pa. Cmwlth. 200, 569 A.2d 1030, 1032 (1990). In zoning matters, the doctrine will not apply if substantial changes in circumstances relating to the land itself have occurred. *Grim v. Borough of Boyertown*, 141 Pa.Cmwlth. 427, 595 A.2d 775, 778 (1991).

■ The Association argues that the distinctions between Dung Phat's earlier applications and the current application represent merely a change in the general theme of the application, and that the substance underlying all of the application is the same. The Association characterizes the applications as seeking essentially the same relief—*i.e.*, the right to use the Property for a retail shopping center with accessory parking. The Association views this present application as a "variation on the central request, rather than [a variation on] the theory behind the request." (Association Br. at 38.) Based upon this perspective, the Association argues that the ZBA erred in concluding that the doctrine of res judicata did not preclude the ZBA from considering Dung Phat's application.

■ The fact that an owner has not been able to sell property for any use permitted in a particular district is evidence that is relevant to the question of unnecessary hardship. *See Serban v. Zoning Hearing Bd. of City of Bethlehem*, 84 Pa.Cmwlth. 558, 480 A.2d 362, 365 (1984). Thus, where a property may once have not been burdened by an unnecessary hardship, the course of time may effect changes to that property and the surrounding area, which may ultimately result in the creation of an unnecessary hardship that did not previously exist.

The ZBA, in addressing the Association's res judicata argument, specifically determined that "[t]he passage of time, the structure's continuing vacancy and [Dung Phat]'s unsuccessful efforts in marketing the [P]roperty for an industrial use were, moreover, themselves changed circumstances warranting consideration of the current proposal." (ZBA decision at 12.) The ZBA found that Dung Phat acquired the Property in 1999 (FF No. 18), that the Property has been vacant and unused

since 2001 (FF No. 17), and that Dung Phat submitted his two previous applications in March and September 2001, respectively (FF Nos. 19, 20). The ZBA also found that the area adjoining the Property along Washington Avenue is becoming increasingly commercial in nature (FF No. 16), and that, after Dung Phat's principal acquired the Property, he listed the Property for sale for approximately five (5) years with a broker who sought to market the Property to industrial users, without success. (FF Nos. 36, 37). Based upon these considerations, we conclude that the ZBA did not err in holding that res judicata does not apply in this case.

■■■ Next we will address the Association's argument that the ZBA erred in concluding that Dung Phat satisfied his burden to prove the elements necessary for the grant of a variance. Section 14–1801(1)(c) of the Philadelphia Zoning Code (Zoning Code) authorizes the ZBA to grant variances where such relief "will not be contrary to the public interest . . . [and] owing to special conditions, a literal enforcement of the provisions [of the Zoning Code] would result in unnecessary hardship." Section 14–1802(1) of the Zoning Code includes twelve specific criteria that the ZBA must *consider* in evaluating a request for a variance. As our Supreme Court has stated, however, while Section 14–1802(1) includes specific matters for the ZBA to consider, the Zoning Code essentially requires an applicant to demonstrate three key requirements: (1) the applicant's property is subject to a unique hardship; (2) granting a variance will not have an adverse effect on the public health, safety, or general welfare; and (3) the variance requested represents "the minimum variance that will afford relief at the least modification possible." *East Torresdale Civic Ass'n v. Zoning Bd. of Adjustment of Philadelphia Cnty.*, 536 Pa. 322, 324–25, 639 A.2d 446, 447 (1994).

■ In *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807 (Pa. Cmwlth.), *appeal denied*, 585 Pa. 692, 887 A.2d 1243 (2005), this Court held that in order to establish unnecessary hardship, "an applicant must prove that either: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance." *Taliaferro*, 873 A.2d at 812.[2] A property owner seeking a use variance must always demonstrate that an unnecessary hardship exists with respect to the property at issue and in light of the permitted uses in the particular zoning district in which the property is located. *Sweeney v. Zoning Hearing Bd. of Lower Merion Twp.*, 534 Pa. 197, 626 A.2d 1147 (1993).

■■ The ZBA articulated two reasons why it concluded that Dung Phat made a showing of an unnecessary hardship: (1) in order to use the building "for a modern industrial use," the building would require

---

2. Although *Taliaferro* involved consideration under Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2, the standards applicable to unnecessary hardship arising under the MPC are essentially the same as the unnecessary hardship standards applicable under the Zoning Code. *See Soc'y Created to Reduce Urban*

*Blight v. Zoning Bd. of Adjustment for the City of Philadelphia*, 772 A.2d 1040, 1044 (Pa. Cmwlth.) (holding that requirements for variance under Section 910.2 of MPC applicable in evaluating requests for variances under Section 14–1802 of Zoning Ordinance), *appeal denied*, 574 Pa. 778, 833 A.2d 146 (2001), *cert. denied*, 539 U.S. 959, 123 S.Ct. 2652, 156 L.Ed.2d 658 (2003).

extensive remodeling (ZBA Decision at 11, para. 10(d)); and (2) Dung Phat had made a long term (five year) attempt to sell the Property for an industrial use, but it was unsuccessful. (*Id.* at para. 10(c).)

In *City of Philadelphia Zoning Board of Adjustment v. Earl Scheib Realty Corporation*, 8 Pa.Cmwlth. 11, 301 A.2d 423 (1973), this Court reviewed a denial of a use variance involving assertions by the owner that it could not use the property for a permitted use. The owner, Scheib, wanted to construct on a vacant lot a two-story building with accessory off-street parking for an auto body paint and body repair shop, a use not permitted in the commercial district in which the property was located. Scheib introduced evidence that similar commercial and industrial uses existed in the area, as well as evidence that the use would not be offensive. The zoning hearing board concluded that no hardship existed. Scheib appealed, and this Court opined:

> We additionally find unique the proposition that, since "[t]here is immutable evidence that the lot has stood abandoned and unoccupied for a long number of years," it "was not necessary, in order to establish hardship, to describe specific attempts at sale." It is axiomatic that the applicant for a variance must prove that the subject property could not be used within the permissible limits of the existing zoning classification. *Marple, Township Appeal*, 430 Pa. 113, 243 A.2d 357 (1968). "Proof that the land cannot be sold for any use permitted by the ordinance is evidence that the land will not yield a reasonable return if the uses are confined to those permitted by existing zoning regulations. To be sure, *inability to sell after a sustained and vigorous effort to do so is evidence that the land is not saleable for a permitted purpose....*" *Zoning Bd. of Adjustment v.*

*Koehler*, 2 Pa.Cmwlth. 260, 278 A.2d 375 (Pa.Cmwlth.1971).

*Scheib*, 301 A.2d at 426 (emphasis added).

Thus, we have specifically acknowledged that a sustained, but unsuccessful attempt to sell property constitutes evidence that the property lacks value for any permitted use. In this case, the ZBA found credible evidence concerning Dung Phat's efforts to sell the Property for an industrial use. The ZBA made the following factual finding: "(Mr. [Phat] Amot[, an officer of Dung Phat] testified that after acquiring the subject property, he listed it for approximately five years with a broker who tried to sell it as an industrial property. He did not receive any offers during that time.)" (FF Nos. 36, 37.) The ZBA has the power to evaluate the evidence and decide the weight to be given to the evidence that Dung Phat submitted. *See Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp.*, 987 A.2d 1243, 1248 (Pa.Cmwlth.2009), *appeal denied*, 607 Pa. 708, 4 A.3d 1056 (2010). The ZBA, as the ultimate arbiter of credibility and finder of facts, determined that Dung Phat made a long-term attempt to seek a buyer who could use the Property for an industrial purpose. Based upon that attempt and failure, the ZBA reasonably concluded that Dung Phat demonstrated the existence of an unnecessary hardship based upon an inability to sell the Property.

■ The Association also argues that Dung Phat failed to demonstrate that his proposed use would not substantially increase congestion in the public streets, one of the criteria the ZBA must consider under Section 14–1802(1) of the Zoning Code. The Association suggests that this provision *requires* an applicant for a variance to conduct a traffic study, and Dung Phat did not conduct such a study. The Zoning Code provision, however, contains no requirement for an owner seeking a variance

to conduct a formal traffic study. The Association claims that Dung Phat bore the burden to prove that the grant of a variance would not create a congestion problem. The Association itself requested a traffic study, and argues that, in the absence of contrary evidence from Dung Phat, the ZBA erred in not denying the variance on the basis of the un-refuted evidence the Association submitted on this issue. While recognizing that the ZBA may reject a witness' credibility, the Association claims that, notwithstanding that determination, the ZBA nevertheless needed evidence, indicating that congestion would not be a problem in order to grant the variance.

As suggested above, however, while Section 14–1802(1) of the Zoning Code requires the ZBA to *consider* whether granting a variance will result in substantial congestion, the Zoning Code places no affirmative burden on an applicant to prove that no substantial congestion will result if the ZBA grants a requested variance. Rather, as suggested by the Supreme Court's analysis in *Torresdale,* regarding the application of the criteria contained in Section 14–1802(1) of the Zoning Code, the ZBA's role is to determine whether an applicant has satisfied the three key requirements for the grant of a variance.

Thus, while the Association is correct in arguing that the ZBA must *consider* the individual criteria contained in Section 14–1802(1), the ZBA, in considering the criteria, evaluates certain of those criteria in light of the umbrella of the public-interest prong of the three-part standard for the granting of a variance. In this regard, the ZBA's responsibility is to consider whether congestion will affect the public welfare. In exercising the discretion that the Zoning Code grants the ZBA, the ZBA may grant a variance, even if congestion is expected, as long as the ZBA also concludes

that such congestion will not be detrimental to the public welfare. In summary, while Dung Phat bore the burden of proof on the broader issue of public welfare concerns, the ZBA could resolve the question of whether Dung Phat satisfied this burden without requiring a showing by Dung Phat that substantial congestion will not occur if a variance is granted.

With regard to the ZBA's consideration of the congestion criteria, the ZBA referred to Dung Phat's testimony that it worked with the City's Streets Department regarding access and parking and revised the proposal in accordance with the Street Department's recommendations. Thus, the ZBA's decision reflects the fact that it *considered* the question of congestion in the overall examination of whether Dung Phat demonstrated that the variance would not detrimentally affect the public welfare. Consequently, we conclude that the ZBA did not err with regard to its evaluation of the road congestion criteria of Section 14–1802(1)(e) of the Zoning Code.

■ The Association also argues that Dung Phat failed to establish that the proposed use would not alter the essential character of the neighborhood, which, like the congestion criteria, is a matter for the ZBA's consideration under subsection Section 14–1802(1) of the Zoning Code. This subsection requires the ZBA to consider whether "the variance will ... substantially or permanently injure the appropriate use of adjacent conforming property." Section 14–1802(1)(c) of the Zoning Code. The ZBA rendered factual findings pertinent to Section 14–1802(1)(c) of the Zoning Code, relating to the various uses of adjoining properties, which indicate that (1) the Property is zoned industrial, but it has some residentially zoned properties on the same block; (2) residential dwellings exist along 23rd, 24th, and Carpenter Street;

(3) an assisted living facility is located in the adjoining area; and (4) commercial and industrial uses exist along Washington Avenue.

The ZBA cited various factors it applied in considering this criterion. For example, the ZBA noted that the plans provide for

orienting the commercial use away from residential streets while simultaneously improving facades, planting trees and creating openings at the rear of the building ... locating vehicular ingress and egress points to direct traffic away from residential streets and onto Washington Avenue, a four lane, two way street lined with commercial and industrial uses ... limiting all trash removal and loading activities to the parking area off Washington Avenue ... creating indoor trash storage areas and agreeing to daily commercial trash removal.

(Conclusion of Law No. 12.)

While a commercial use will change the neighborhood to some degree, because the neighborhood consists of residential, commercial, and industrial uses, the ZBA was cognizant of the fact that the Property itself is zoned for industrial uses. Since an industrial use is permitted as of right, it was reasonable for the ZBA to conclude that permitting a commercial use of a property zoned for industrial use would not alter the essential character of the neighborhood. The ZBA clearly considered the effect of the proposed use on the use of adjacent properties, and it reasonably concluded that the proposal would not detrimentally affect the public welfare. We conclude, therefore, that the ZBA did not err in its consideration of the effect of the proposed use on the neighborhood.

▮ Finally, we will address the Association's argument that the trial court erred in affirming the ZBA's grant of the variance because the Association did not request the minimum variance necessary. The Association contends that the variance that the ZBA granted improperly exceeds the minimum variance necessary to afford relief to Dung Phat. We note, however, that this minimization requirement contained in both the MPC and the Zoning Code appears to pertain more to dimensional variance requests. The MPC specifically provides that adjudicators and reviewing courts consider the specific variance requirements identified in Section 910.2(a) of the MPC when they are *relevant*. Section 910.2(a) of the MPC. The rule of minimization has clear application in the context of a dimensional variance, because an applicant should be entitled to a modification of a dimensional zoning requirement only to the extent necessary to grant relief. Otherwise, an adjudicator or reviewing court could provide relief that goes beyond the necessity of curing an unnecessary hardship under the applicable zoning ordinance. In the context of a use variance, the criteria other than the minimization requirement serve the purpose of placing restrictions on the exercise of a zoning board's inherent power to exercise discretion in the granting of a variance. The Association offers no legal citation to cases in which zoning hearing boards or reviewing courts have applied the minimization requirement in the context of a pure use variance application. We acknowledge here that our own research may have failed to discover such a case, but, even so, absent such a reference in the Association's brief, we conclude that the minimization requirement is not relevant in this case. We conclude, therefore, that the Association's argument as to this issue lacks merit and does not provide support for the Association's claim that the ZBA erred in granting the variance.

Accordingly, we will affirm the trial court's order.

## ORDER

AND NOW, this 13th day of September, 2012, the order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

## DISSENTING OPINION BY PRESIDENT Judge PELLEGRINI.

I respectfully dissent because the Philadelphia Zoning Board of Adjustment's (Zoning Board) Findings of Fact do not support the grant of a variance in this case. As noted by the majority, the Zoning Board stated two reasons why it concluded that Dung Phat LLC had established unnecessary hardship: (1) the building would require extensive reconstruction to be suitable for a modern industrial use; and (2) Dung Phat LLC had unsuccessfully tried to sell the property for an industrial use over several years.

To establish unnecessary hardship, an applicant must prove: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance. *SPC Co., Inc. v. Zoning Board of Adjustment of the City of Philadelphia,* 773 A.2d 209, 214 (Pa.Cmwlth.2001), *appeal denied,* 568 Pa. 689, 796 A.2d 320 (2002). However, the Zoning Board's Findings of Fact 33 and 34 that Mr. Deutsch testified that "existing building, in its present configuration, cannot be used for an industrial use" because it is too small to be suitable, and that it was "dilapidated," "not occupiable," and "in need of rehabbing," do not establish that it cannot be used for any purpose permitted in the G–2 zoning district, that the cost for it to be conforming is prohibitive, or that the property is valueless without the variance.

In addition, it is true that inability to sell after a sustained and vigorous effort to do so is evidence that a parcel is not saleable for a purpose permitted by the zoning regulations. *City of Philadelphia Zoning Board of Adjustment v. Earl Scheib Realty Corp.,* 8 Pa.Cmwlth. 11, 301 A.2d 423, 426 (1973). "The mere placing of a 'for sale' sign on the property and listing it with local real estate brokers without quoting a sales price, however, does not evidence 'the active, prolonged, and specific testing of the marketability of the ground which is essential to demonstrate that it cannot be sold or used for the purpose zoned.'" *Rubin v. Upper Southampton Township Zoning Hearing Board,* 19 Pa. Cmwlth. 469, 338 A.2d 773, 776 (1975) (citation omitted). *See also Rees v. Zoning Hearing Board of Indiana Township,* 11 Pa.Cmwlth. 461, 315 A.2d 317, 319–20 (1974) (holding that the testimony of the prior owner of a lot that she had tried to sell for seven years was insufficient evidence of an active, prolonged and specific testing of marketability of the lot to support unnecessary hardship). Thus, the Zoning Board's Finding of Fact 37 that Phat Amot testified that he had listed the property with a broker for approximately five years who tried to sell it as an industrial property is also not sufficient evidence to demonstrate the requisite unnecessary hardship.

Moreover, the Zoning Board's Findings of Fact 13, 14 and 15 demonstrate that the only uses in the blocks surrounding Dung Phat LLC's parcel are industrial and residential uses, including an assisted-living facility. Although Finding of Fact 16 notes that commercial uses are "becoming increasingly common" along Washington Avenue, there is no finding indicating the proximity of such uses to Dung Phat LLC's parcel in the G–2 zoning district or to the residential uses in the surrounding residential zoning districts. Even if a vari-

ance was otherwise appropriate, there is no Zoning Board finding that permitting commercial uses for this parcel would be consistent with the existing residential and industrial uses in the area. *See Arter v. Philadelphia Zoning Board of Adjustment,* 916 A.2d 1222, 1228 (Pa.Cmwlth.), *appeal denied,* 594 Pa. 691, 934 A.2d 75 (2007) (holding that consideration of whether the proposed use will alter the essential character and nature of a neighborhood is proper under Section 14–1802(1)(c) of the Zoning Code in determining whether to grant a use variance).

Accordingly, unlike the majority, I would reverse the trial court's order because the Zoning Board's Findings of Fact do not support the grant of a variance.