# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: 3401 Sky Properties, LLC | : | CASES CONSOLIDATED |
| | : | |
| From Decisions of: | : | |
| City of Philadelphia Zoning | : | |
| Board of Adjustment | : | |
| | : | No. 828, 829, 830 C.D. 2022 |
| Appeal of: 3401 Sky Properties, LLC | : | Submitted: May 7, 2024 |

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
JUDGE COVEY                                FILED:  June 3, 2024

3401 Sky Properties, LLC (Applicant)[1] appeals from the Philadelphia County Common Pleas Court's (trial court) June 30, 2022 order (entered July 1, 2022) affirming the City of Philadelphia (City) Zoning Board of Adjustment's (ZBA) decision that denied its applications for use variances for properties located at 537 Jackson Street (537), 539 Jackson Street (539), and 541 Jackson Street (541) (collectively, Properties) in the City. Applicant presents three issues for this Court's review: whether the ZBA erred by denying the variances where: (1) Applicant presented credible evidence of unnecessary hardship; (2) the requested variances were the minimum necessary to afford relief from the Philadelphia Zoning Code's (Zoning Code)[2] requirements; and (3) substantially similar use variances were granted for the Properties in 2016, and there has been no meaningful change in the conditions of the Properties and surrounding community since that time. After review, this Court reverses.

---

[1] Maily Lai and Ting Chen (Chen) are Applicant's principals.
[2] Phila., Pa., Zoning Code (2012), https://codelibrary.amlegal.com/codes/philadelphia (last visited May 31, 2024).

Each of the Properties consists of an existing, approximately 2,300-square-foot, three-story structure located in the City's Residential Single-Family Attached-5 (RSA-5) Zoning District.[3] In 1940, 539's previous owner obtained a variance to use it as a triplex. In 1952, 541's previous owner obtained a variance to use it as a triplex. In 1977, 537's previous owner obtained a variance for a two-family use based on documentation that it had been used as a multi-unit building since at least 1966.[4] The Properties were subsequently sold to one owner. The Properties were continually used as multi-family dwellings until 2014.[5] However, despite the continuous use, because the previous owner failed to maintain rental licenses for the Properties between 2009 and 2014, the multi-family use variances lapsed.

JCAAL LLC (JCAAL) purchased the Properties from the previous owner and applied for new variances for multi-family uses at the Properties - a return to use of 537 as a two-family home.[6] At that time, registered community organizations (RCO), and the Street Community Civic Association (SCCA), did not oppose the variances. City Council District 1 member Mark Squilla (Councilman Squilla) declared that although he would not normally support multi-family

___

[3] Section 14-401(1)(c)(.2) of the Zoning Code provides, in relevant part:

> The RSA . . . districts are primarily intended to accommodate attached and semi-detached houses on individual lots, but may be applied in areas characterized by a mix of housing types, including detached houses. The districts are also intended to provide a density transition between [Residential Single-Family Detached] districts and [Residential Multi-Family] districts.

https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-289424 (last visited May 31, 2024).

[4] The record reflects that when F. Ellen Karasik purchased 537 in June 1976, the owner had used that property as a two-family dwelling since 1966 without ever having obtained a variance to do so, and she purchased the property "unaware that it was not zoned for two families." Reproduced Record at 70a.

[5] The Properties consisted of eight units.

[6] JCAAL's proposal consisted of eight units.

2

dwellings in a residential neighborhood, since SCCA and the community were not opposed to the proposed use, he would leave the final decision to the ZBA. See Reproduced Record (R.R.) at 155a. In October 2016, the ZBA granted the variances. Due to JCAAL's financial difficulties, it was unable to complete the necessary renovations at the Properties before the variances lapsed in 2019.

On January 31, 2020, Applicant purchased the Properties from JCAAL for $306,000.00, intending to use them for multi-family housing. On February 11, 2020, Applicant applied to the City's Department of Licenses and Inspections (L&I) for Zoning/Use Registration Permits to renovate the Properties so that each structure contained three apartments - one unit on each floor.[7] On February 15, March 17, and April 1, 2021, respectively, L&I denied the applications on the basis that Section 14-602-1 of the Zoning Code, Zoning Code § 14-602-1,[8] prohibits multi-family uses in the RSA-5 Zoning District. Applicant appealed from L&I's refusals to the ZBA.

On May 27, 2021, Applicant issued notice of a community meeting on June 11, 2021, which Bruce Baldwin (Baldwin), on behalf of RCO Seventh Street Community Civic Association attended, in opposition to the applications. No other community members attended the meeting. By August 3, 2021 email to the ZBA, Baldwin opposed the applications. By August 5, 2021 letter to the ZBA, RCO Whitman Council, Inc. opposed the applications. By August 9, 2021 letter to the ZBA, Councilman Squilla opposed the applications.

On August 11, 2021, the ZBA conducted a consolidated ZOOM teleconference hearing at which the ZBA accepted the opposition correspondence and Applicant's documentation into evidence. City Planning Commissioner David Fecteau recommended that the ZBA approve the variances for all three Properties as it had done in 2016. See R.R. at 12a. Applicant's counsel, Jennifer Bazydlo

---

[7] Applicant's proposal consists of nine units.
[8] https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-292339 (last visited May 31, 2024).

3

(Counsel), presented the Properties' histories, discussed the make-up of the neighborhood,[9] declared that the proposed use is "consistent with the adjacent uses in the neighborhood[,]" R.R. at 10a, and stated that Applicant would rent each unit in the Properties for approximately $700.00 to $800.00 per month, making them affordable and accessible to the existing community. *See* R.R. at 10a. Counsel further declared "that the [City's Office of Property Assessment (]OPA[)] records for all of these [P]roperties indicate that they are apartments[ and/or] conversions, and so they are currently being taxed and classified by the OPA as multi-family properties." *Id*.

> Counsel added:
>
> [Applicant] is well capitalized and is prepared to invest over $300,000[.00] in renovation in these [P]roperties over and above the acquisition cost to complete the extensive renovations that are needed inside and outside of th[ese P]ropert[ies]. And quite frankly, without the granting of these variances, this project is financially unviable.
>
> Since 2014, these [P]roperties have sat vacant. They have been, despite both my prior client and [Applicant's] best efforts, they have been subject to squatters breaking into the building, illegal drug use, dumping, and all sorts of other problems.
>
> We are prepared to start this renovation and finish it within the next five to eight months, have families living back in these properties from the community, engaging in the neighborhood[,] and keeping a watch over the area. If the variances are denied, the[] [Properties] will likely sit vacant for a significantly longer period of time.[10]

---

[9] According to Counsel, the only other structure on the 500 block of Jackson Street is a 67-unit apartment building; Weinberg Park is located across Jackson Street from the Properties; there are no single family uses on the block; within 1 block of the Properties there are 23 other properties that were last registered for either multi-family or mixed commercial and residential use. *See* R.R. at 9a-10a.

[10] Counsel also asserted that Baldwin's behavior at the June 11, 2021 meeting and in his August 3, 2021 email to the ZBA were overtly racist. *See* R.R. at 11a.

*Id.* Thereafter, Counsel called Applicant's principal Maily Lai (Lai), whose testimony consisted of the following exchange:

> [Counsel]: You heard my testimony here today and believe it to be truthful and accurate?
>
> [] LAI: Yes.
>
> [Counsel]: And you would adopt it as your own and choose to adopt it as your own?
>
> [] LAI: Yes.

R.R. at 11a.

On September 8, 2021, the ZBA unanimously voted to deny the requested variances. On October 22, 2021, Applicant appealed from the ZBA's decisions to the trial court. On March 11, 2022, the ZBA issued its findings of fact and conclusions of law. *See* R.R. at 1a-7a, 247a-253a, 493a-499a. The trial court heard oral argument on June 14, 2022. By order dated June 30, 2022 (entered on July 1, 2022), the trial court denied the appeals and affirmed the ZBA's decisions. On August 3, 2022, Applicant appealed to this Court.[11, 12]

On August 15, 2022, the trial court directed Applicant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of

---

[11] By March 3, 2023 Order, this Court consolidated Applicant's appeals. The ZBA's brief was due on May 30, 2023. Because the ZBA did not file a brief by that date, on July 6, 2023, this Court directed the ZBA to file its brief within 14 days or it would be precluded from doing so. The ZBA did not file a brief. By August 14, 2023 Order, this Court precluded the ZBA from filing a brief.

[12] Where, as here, the trial court does not take additional evidence, this Court's review is limited to determining whether the zoning board committed an error of law or an abuse of discretion. *See Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, . . . 462 A.2d 637, 639 ([Pa.] 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id.* at 640. Substantial evidence is such evidence a reasonable mind might accept as adequate to support a conclusion. *Id.*

*Azoulay v. Phila. Zoning Bd. of Adjustment*, 194 A.3d 241, 246 n.4 (Pa. Cmwlth. 2018).

Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Applicant filed its Rule 1925(b) Statement on September 6, 2022. On January 31, 2023, the trial court filed its opinion pursuant to Rule 1925(a).

Initially, Section 14-103(4)(a)(.3) of the Zoning Code states: "The [ZBA] may, after public notice and public hearing . . . [a]uthorize variances from the terms of this Zoning Code[.]" Zoning Code § 14-103(4)(a)(.3).[13] Section 14-303(8)(e)(.1) of the Zoning Code declares:

> The [ZBA] shall grant a variance only if it finds each of the following criteria are satisfied:
>
> (.a) The denial of the variance would result in an unnecessary hardship. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in [Section] 14-303(8)(e)(.2) [of the Zoning Code] (Use Variances) below, in the case of use variances, or the criteria set forth in [Section] 14-303(8)(e)(.3) [of the Zoning Code] (Dimensional Variances) below, in the case of dimensional variances, have been satisfied;
>
> (.b) The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue;
>
> (.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;
>
> (.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;
>
> (.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

---

[13] https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-287462 (last visited May 31, 2024).

6

(.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g) The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located; and

(.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

Zoning Code § 14-303(8)(e)(.1).[14]

Section 14-303(8)(e)(.2) of the Zoning Code further specifies regarding use variances:

To find an unnecessary hardship in the case of a use variance, the [ZBA] must make all of the following findings:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) peculiar to the property, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently

---

[14] https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-288861#JD_14-303(8) (last visited May 31, 2024).

7

impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

(.d) That the hardship cannot be cured by the grant of a dimensional variance.

Zoning Code § 14-303(8)(e)(.2).[15] "Th[e Pennsylvania Supreme] Court has 'boiled down' [that] criteria into three key requirements: '(1) unique hardship to the property; (2) no adverse effect on the public health, safety[,] or general welfare; and (3) . . . the minimum variance that will afford relief at the least modification possible.'" *Marshall v. City of Phila.*, 97 A.3d 323, 329 (Pa. 2014) (quoting *E. Torresdale Civic Ass'n v. Zoning Bd. of Adjustment of Phila. Cnty.*, 639 A.2d 446, 447 (Pa. 1994)).

"The party seeking the variance bears the burden of proof." *Marshall*, 97 A.3d at 329; *see also* Zoning Code § 14-303(8)(e) ("The [ZBA] shall grant a variance only if it determines that the applicant has demonstrated that the criteria of [Section] 14-303(8)(e) [of the Zoning Code] (Criteria for Approval) have been met[.]"). "The burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious[,] and compelling." *Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 530 (Pa. Cmwlth. 2018). Ultimately, "[i]t is the function of the [ZBA] to determine whether the evidence satisfies the criteria for granting a variance." *Marshall*, 97 A.3d 323 at 331.

Here, based on the record evidence, the ZBA's Findings of Fact (FOF) consist primarily of the admitted documents, opposition letters, and Counsel's representations. Based thereon, the ZBA made the following pertinent Conclusions of Law:

6. In this matter, the [ZBA] found the Applicant had not met its burden of establishing that the criteria for grant of

---

[15] https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-288786 (last visited May 31, 2024).

8

[the] use variance[s] were satisfied. **It specifically did not offer objective or expert testimony showing unique conditions of the [P]ropert[ies] that would preclude it being used in conformity with [Zoning] Code requirements**. It therefore did not establish hardship, the primary criterion for grant of [the] variance[s].

7. The [ZBA] additionally concludes Applicant failed to establish that the requested variances are the least necessary to afford relief and that the proposed use will not be detrimental to the public health, safety[,] or welfare.

8. Based on the testimony presented and the documentary evidence submitted, and applying the applicable [Zoning] Code standards, [it] properly denied the requested use variance[s].

R.R. at 6a-7a (emphasis added).

Applicant first argues that the ZBA erred by denying the variances when Applicant presented substantial evidence of unnecessary hardship. Applicant claims that it demonstrated unnecessary hardship with "evidence of the Properties' continuous use as multi[-]family dwellings, of the financial infeasibility of the conversion and renovation of the existing multi[-]family dwellings to single[-]family homes, as well as the use of adjacent properties as large apartment buildings and other non-single family uses[,]" Applicant Br. at 13, and "conversion of the properties to single[-]family use would be cost prohibitive." *Id*. at 14.

The ZBA expressly held that Applicant did not meet its burden of proving a hardship because "[i]t specifically did not offer objective or expert testimony showing unique conditions of the [P]ropert[ies] that would preclude it being used in conformity with [Zoning] Code requirements." R.R. at 6a-7a. However, as our Supreme Court explained:

> Th[e Pennsylvania Supreme] Court has previously held that, in the context of use variances, unnecessary hardship is established by evidence that[] (1) the physical features of the property are such that it cannot be used for a permitted purpose;

9

**or** (2) the property can be conformed for a permitted use only at a prohibitive expense; **or** (3) the property has no value for any purpose permitted by the zoning ordinance.

Th[e Pennsylvania Supreme] Court has repeatedly made clear that in establishing hardship, an applicant for a variance is not required to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose. On several occasions, [our Supreme Court] ha[s] reversed the Commonwealth Court when it had relied on such a standard for unnecessary hardship in reversing the grant of a variance. Showing that the property at issue is valueless unless the requested variance is granted is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a variance request. Rather, *multiple factors are to be taken into account when assessing whether unnecessary hardship has been established*.

*Liberties Lofts LLC*, 182 A.3d at 531 (italic emphasis added) (quoting *Marshall*, 97 A.3d at 330-31 (emphasis in original) (citations and quotations omitted)).

To that end, as [this Court] noted in *South of South Street Neighborhood Ass'n* [*v. Philadelphia Zoning Board of Adjustment*, 54 A.3d 115 (Pa. Cmwlth. 2012),[16]] while "a property may once have not been burdened by an unnecessary hardship, the course of time may effect **changes to that property and the surrounding area**, which **may ultimately result in the creation of an unnecessary hardship** that did not previously exist." *Id*. at 120. Contrary to [the o]bjector's assertions, "[the applicant] [was] not required to present evidence that the subject property could not be utilized for its intended uses or whether there were alternative permitted uses under the [] zoning restrictions to which the subject property could be utilized for, nor [was] [the applicant] required to submit evidence that [it] attempted to sell the [subject] property to no avail." *Chosen 300 Ministries*[*, Inc. v. Phila. Zoning*

---

[16] *South of South Street* was disapproved on other grounds in *Scott v. City of Philadelphia, Zoning Board of Adjustment*, 126 A.3d 938 (Pa. 2015).

*Bd. of Adjustment* (Pa. Cmwlth. No. 67 C.D. 2015, filed January 19, 2016)],[17] slip op. at 9 . . . . Indeed, [our] Supreme Court "explicitly rejected the requirement that an applicant for a variance . . . eliminate every possible permitted use." *Marshall*, 97 A.3d at 332. Moreover, while evidence of failed attempts to sell the property "may be probative . . . [our Supreme Court] ha[s] concluded that it is 'unreasonable to force a property owner to try to sell his property as a prerequisite to receiving a variance.'" *Id.* at 330 (citation omitted).

*Liberties Lofts LLC*, 182 A.3d at 535 (emphasis added).

Here, it was not necessary to show that *changes* to the Properties and the surrounding area ultimately resulted in the creation of an unnecessary hardship that did not previously exist because the Properties have been continuously used as multi-unit buildings for over 50 years, and the proposed use is consistent with the adjacent uses in the neighborhood. *See* R.R. at 3a (FOF 14). Specifically, Counsel related that the only other structure on Jackson Street is a 67-unit apartment building, and across the street is Weinberg Park. *See* R.R. at 9a; *see also* FOF 15. There are no single-family uses on the block. *See id.* Also, 23 properties within the adjacent block were last registered for use as either multi-family or mixed use commercial and residential. *See* R.R. at 10a; *see also* FOF 16. In addition, the next block over is the Seventh Street commercial corridor, and the next block to the north is Snyder Avenue, which has many mixed-use commercial buildings and multi-family housing. *See id.* Next to the Snyder block there is another large apartment complex and there are several other apartment buildings beyond that narrow one block radius. *See id.* Clearly, the continuous use of the Properties as multi-unit buildings, as opposed to single-family dwellings, and the surrounding area consisting of mostly multi-unit properties, "ultimately result in the creation of an unnecessary

_____

[17] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

11

hardship[.]" *Liberties Lofts LLC*, 182 A.3d at 535. Accordingly, this Court holds that the ZBA erred by concluding otherwise.

Further, our Supreme Court has explained:

> Based upon the plain language of the [] Zoning Code, as well as its structure, we conclude that, while **the redevelopment of** blighted and **abandoned buildings** is salutary, . . . we believe that these characteristics of a property, by their nature, **fit** . . . **within a hardship analysis**. Indeed, **the unnecessary hardship requirement for a use variance is open ended**, **speaking in terms of physical "circumstances or conditions" of the property**, **clearly encompassing considerations of** blight and **abandonment**. [] Zoning Code §§ 14-303(8)(e)(.1)(.a) and 14-303(8)(e)(.2).

*Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 509 (Pa. 2021) (emphasis added).

Here, the ZBA observed:

> 12. [Counsel] said **the [P]roperties have "sat vacant" since 2014** and despite her client's and the prior owner's "best efforts, **they have been subject to squatters breaking into the building**, **illegal drug use**, **dumping**, and all sorts of problems." [R.R. at 10a].
>
> 13. [Counsel] said her client was "well capitalized" and prepared to start this renovation and finish it within the next five to eight months, **have families living back in these [P]roperties from the community**, **engaging in the neighborhood and keeping a watch over the area**." Denial of the variances would, she suggested, result in the properties remaining vacant "for a significantly longer period of time." [R.R. at 10a].

R.R. at 3a (emphasis added). Thus, including the "physical 'circumstances or conditions' of the [P]ropert[ies]" into the undue hardship analysis provides another basis for supporting the conclusion that Applicant has met its burden of proving an undue hardship. *Metal Green Inc.*, 266 A.3d at 509.

Moreover, "as noted above, in *Marshall*, the [Pennsylvania Supreme] Court placed considerable weight on the community support for the applicant's

proposal." *Liberties Lofts LLC*, 182 A.3d at 535. Here, although the ZBA did not mention the community opposition as a basis to deny the variances, it bears noting that the basis of the opposition was, *inter alia*, racism. As stated in the ZBA's Findings of Fact:

> 18. The coordinating RCO submitted a letter opposing the proposed uses[.] The [ZBA] also received letters in opposition from Whitman Council, another RCO for the area, and from [] Councilman [] Squilla.[18] *See* Letters in Opposition.
>
> 19. [Counsel] acknowledged the opposition[] but noted that the community meeting was only attended by the RCO chair, [Baldwin].
>
> 20. Describing the meeting, [Counsel stated] she had "never seen such egregious behavior at an RCO meeting. Describing the meeting, she said:
>
>> [Baldwin] continually mentioned the national origin and race of my clients throughout the meeting . . . [and] went on a tirade for over 20 minutes about []how Asian landlords don't rent to the community[;] they only rent to Asians and violate fair housing standards.
>
> [August 11, 2021 Notes of Testimony] at 10-11.

R.R. at 4a.

> At the ZBA meeting, Counsel described:
>
> My client also insisted that they would follow all laws and rent to whoever is a qualified candidate regardless of their race, and I asked if [Baldwin] specifically had any evidence that my client had ever violated fair housing laws. **[Baldwin] just continued on about how the**

---

[18] Councilman Squilla reversed his opposition to the proposed uses at the Properties because his opposition at the time of the ZBA hearing was based on incorrect information about the Properties and Applicant's principals, Lai and Chen, provided by Seventh Street Community Civic Association. *See* Applicant Br. at Ex. 4. This Court acknowledges that it "may not consider extra-record evidence that is not part of the certified record on appeal." *Brown v. Unemployment Comp. Bd. of Rev.*, 276 A.3d 322, 331 n.13 (Pa. Cmwlth. 2022).

**community couldn't support variances for apartments that would only be rented to Asians**.

> So, shockingly, if you read [Baldwin's] letter, this racism is reflected further in his letter where he points out, again, unnecessarily and without any reason, my clients' ethnicity[,] and their English language skills.

R.R. at 11a (emphasis added). Accordingly, while Applicant did not have community support, the reason for at least some of the opposition was racism, which is beyond reprehensible.

Applicant next argues that the ZBA erred by denying the variances when they are the minimum necessary to afford the Properties relief from the Zoning Code's requirements. Applicant further asserts that the ZBA erred by denying the variances when substantially similar use variances were granted for the Properties in 2016, and there has been no meaningful change in the conditions of the Properties and surrounding community since that time. Applicant contends that it is merely seeking to continue to use the Properties as multi-family housing, as they have been used for over 50 years, with 1 unit on each floor. According to Applicant, this will provide for adequately sized, accessibly priced units that still allow the project financial viability, and continuation of a long-standing use is incontrovertibly the minimum relief necessary to afford relief as it is a request to keep the status quo.

Without specifying any reasons, the ZBA concluded that "Applicant failed to establish that the requested variances are the least necessary to afford relief and that the proposed use will not be detrimental to the public health, safety[,] or welfare." R.R. at 7a. The ZBA's determination that Applicant failed to establish that the requested variances are the least necessary to afford relief and that the proposed use will not be detrimental to the public health, safety, or welfare, is therefore, not supported by substantial evidence.

This Court recognizes that "a zoning hearing board *does not* abuse its discretion if it denies a second variance after expiration of an earlier variance . . .

14

[and] [an applicant] cannot use the [ZBA's] grant of the expired [] variance to compel the grant of a new variance." *Omnivest v. Stewartstown Borough Zoning Hearing Bd.*, 641 A.2d 648, 652 (Pa. Cmwlth. 1994). However, here, Applicant did not argue that the 2016 expired variances compel the ZBA to grant the current variances. Applicant argued that based on the evidence presented, (i.e., that the Properties have been used as multi-unit buildings for over 50 years, OPA has currently taxed and classified the Properties as multi-family properties, there are virtually no single-family dwellings in the surrounding neighborhood, and the Properties are currently being used by squatters, breaking into the building, for illegal drug use, dumping, and all sorts of problems), that continuing the use of multi-unit buildings is not any less of a minimum variance to afford relief than the requested use variances granted in 2016, or that the proposed use will not be any more detrimental to the public health, safety, or welfare, than it was in 2016.[19]

In *RDM Group v. Pittston Township Zoning Hearing Board*, 311 A.3d 1216 (Pa. Cmwlth. 2024), this Court addressed a zoning hearing board's (ZHB) summary conclusion that a requested use variance was not the minimum variance that could provide relief, and this Court determined that the conclusion was not supported by substantial evidence. Specifically, the *RDM Group* Court opined:

> Regarding the minimum variance requirement, the ZHB . . . summarily concluded that the requested use variance does not represent the minimum variance that will afford relief to [RDM]. The ZHB made no additional findings or conclusions regarding why this was so and did not reject any of RDM's expert testimony. In this regard, [Rocco] Caracciolo testified that RDM's proposed warehouse would not be any closer to the neighboring residences than are the industrial uses already in place nearby, and [Jeffrey] Fiore [(Fiore)] testified that the traffic impact will be modest and fully accommodated by the existing roadway system. **There is simply no**

---

[19] This Court observes that the ZBA did not state or infer in any way that the 2016 use variances were granted in error.

15

**evidence in the record suggesting that the proposed variance is greater in scope than is necessary to permit RDM's reasonable proposed use of the [p]roperty.**

*Id*. at 1229 (emphasis added; internal citations and quotation marks omitted).

Similarly, here,

[r]egarding the minimum variance requirement, the [ZBA] . . . summarily concluded that the requested use variance[s] [do] not represent the minimum variance that will afford relief to [Applicant]. The [ZBA] made no additional findings or conclusions regarding *why* this was so and did not reject any of [Applicant's evidence, i.e., that the Properties have been used as multi-unit buildings for over 50 years, OPA has currently taxed and classified the Properties as multi-family properties, and there are virtually no single-family residential dwellings in the surrounding neighborhood]. . . . **There is simply no evidence in the record suggesting that the proposed variance[s] [are] greater in scope than is necessary to permit [Applicant's] reasonable proposed use of the Propert[ies].**

*Id*. (emphasis added; internal citations and quotation marks omitted).

The *RDM Group* Court also addressed the ZHB's summary conclusion that the requested use variance was adverse to the public health, safety, or welfare. Specifically, the *RDM Group* Court opined:

[R]egarding adverse impact on the public, the real estate, land use, engineering, and traffic experts presented by RDM all testified that granting the variance would not negatively impact the public. In particular, [Alan] Rosen testified that permitting construction of the proposed warehouse would not adversely affect the value of neighboring properties. [] Fiore testified that, based on his traffic study of the road system surrounding the [p]roperty, it was adequate to accommodate the modest increase in traffic caused by the warehouse without any additional congestion. **Those opinions were not contradicted at the hearing**, **and the ZHB did not make any findings that they were not credible or unworthy of evidentiary weight**.

16

*Id.* (emphasis added; internal citations omitted).

Similarly, here,

regarding adverse impact on the public, [Counsel described that the Properties have sat vacant, and that they have been subject to squatters breaking into the building, illegal drug use, dumping, and all sorts of other problems.] In particular, [Counsel stated: "We are prepared to start this renovation and finish it within the next five to eight months, have families living back in these properties from the community, engaging in the neighborhood[,] and keeping a watch over the area.  If the variances are denied, the[] [Properties] will likely sit vacant for a significantly longer period of time."]  [R.R. at 10a.] . . . . **Those [statements] were not contradicted at the hearing**, **and the [ZBA] did not make any findings that they were not credible or unworthy of evidentiary weight**.

*RDM Grp.*, 311 A.3d at 1229 (emphasis added).

"The [ZBA's] findings and conclusions with regard to [Applicant's] requested use variance[s] are not supported by substantial evidence.  The [ZBA] therefore abused its discretion in denying the use variance[s], and [this Court] accordingly reverse[s] the trial court's order[.]" *Id.*

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: 3401 Sky Properties, LLC       :     CASES CONSOLIDATED
                                            :
From Decisions of:                         :
City of Philadelphia Zoning             :
Board of Adjustment                   :
                                            :     No. 828, 829, 830 C.D. 2022
Appeal of: 3401 Sky Properties, LLC    :

## O R D E R

AND NOW, this 3rd day of June, 2024, the Philadelphia County Common Pleas Court's June 30, 2022 order (entered July 1, 2022) is reversed.

_____
ANNE E. COVEY, Judge